Judge Undeiuvoop,
delivered the opinion of the court.
Benjamin Letches,, in Dec. 1791, filed his bill in the Quarter Session court, for the county of Mercer, against the widow and heirs of John Letcher, alleging that he and said John, were jointly concerned in the purchase of three hundred and twenty acres of land, from Flournoy and Reading, that on account of the absence of the complainant, the bonds for the purchase money were executed by said John alone, and bonds for the title executed to him, that it was expressly agreed between the complainant and said John, that the former- should have an equal portion of the land purchased; but relying on the honesty of said John, the complainant omitted to take any instrument of writing, evidencing the agreement; and that the complainant as a partner in the purchase had actually paid half the purchase money. Whereupon, the complainant prayed for a division of the land between the heirs of said John and himself, and that the heirs might be compelled to convey, &c.
The subsequent proceedings show, that during the pendency of this bill in the Quarter Session court, the heirs of John Letcher had no title to the lands. The court however, decreed a partition and conveyance according to the prayer of the bill. This decree was afterwards reversed by this court. After the return of the cause, the complainant amended his bill, charging “that the purchase of the tract of land mentioned in the original bill, was a joint purchase made by his brother John, for the 'benefit of the complainant and himself, previous to the making of which, his said brother wrote to him, that he would make a purchase of the land for your orator, who consented to the same as wil Imore fully appear by a letter, bearing date, &c.”
By a subsequent amendment of the bill, the complainant alleges, that the letter here referred to, had been lost or mislaid, so that it could not be exhibited. In the first amendment the complainant alleges, that he *591 -paid in compliance 'with the stipulations between him and his brother John, :,§'200 in notes, on the bank of the United States, and afterwards (to-wit, after the of his brother) paid to Reading and Flournoy, the balance of his proportion of the purchase money, and took in the bonds of his brother.
The heirs of John Letchér deny every material allegation of the bill, and very unjustifiably in the present, aspect of the cause, apply degrading and cotuiitelibus epithets to their uncle, the complainant.
It is in proof by these witnesses, that John Letchér ‘Hid substantially acknowledge to them, that the complainant was equally interested in the purchase. Reading1 however, one of the vendors, states in his deposition^ that he knew nothing of the complainant at the timé he sold the land, and that the contract was made witíi John Letcher, as the sole purchaser. One of the witnesses, who lived with said John at the time, states, that he insisted on buying the land, and not being able to do It himself, wrote to his brother Benjamin to join him in the purchase, to which said Benjamin assented, as the witness understood from said John. In a very short time thereafter, said John left Frankfort, and went to Mercer, to obtain his brother Benjamin’s proportion for the first payment for the land, and upon his return to Frankfort, he informed the witness, that he had received the money from his brother Benjamin, for his half cif the first payment. He then went to Reading and Flournoy, as the witness understood, and reduced the contract to writing, and informed the witness, that it was for the joint benefit of himself and his brother 'Benjamin, and shortly afterwards he died.
In 1817, Reading conveyed to Rowland Letcher, one of the heirs of John Letcher, deceased, half of the three hundred and twenty acres, and in 1819, Flournoy, by a commissioner, conveyed the other half to the whole of said John’s heirs. Each deed purports to be made on the consideration of $400. It seems, that Benjamin Letcher, after the death of his brother John, collected a bond for £200, due for the sale of said John’s land in Mercer.
It also satisfactorily appears, that said Benjamin paid the balance of the purchase money due for the three *592 hundred and twenty acres of land, after the death of his brother John; and that he paid $‘150 to James George, who married ‘ his brother’s widow, and $70 to two of his brother’s sons, and that one of them was indebted to him $5); for an allegation to that effect is not denied. The widow -administered on the estate of John Letch-er, and the complainant seems to have acted as her friend and ’agent. The pi ice of the land purchased of F-lourooy and Reading was $2 -59 cents per acre.
’-Where con- ■ VeyanCe has '■been iaken in - the name of ,. ■ one person, • and the pur- • -chase money ■ by another, a trust results iy implication • of law, in fa- ; vourof person, ■ who paid the jmrcbare money.
The court dismissed the complainant’s bill with costs, and he has appealed. The complainants claim to relief upon the ground of an agreement with his brother John, to purchase the land in partnership, or to let the complainant have half of it, Cannot be sustained. As such an an agreement was never reduced to writing, the Statue of Frauds presents an insuperable bar to relief upon that groünd. ]f the complainant can- succeed at all, it ■must be because the case made- out, is a trust resulting from the advance of half the purchase money in pa) ment for the land. By the Statute of 29, Charles II, from and after the 24th of June, 1677, all declarations or creations of trusts or confidences of-tiny lands, tenements or heieditaments were -required to be manifested and proved by some writing signed by the party, who is by law enabled to declare such trust, or by his last will and testament, otherwise they viere declared by the statute, to he utterly void. But there was an exception made by tais statute “where any conveyance shall he made of any lands or tenements, by which a trust or cofidence shall, or may arise or result by implication) or construction of law, &c.” Such a trust or confidence was permitted to retain the like force, and effect, as though the statute had not been made.
No subsequent statute, either of England, Virginia, or Kentucky, has destroyed the exceptibn in favor of resulting ' trusts, or trusts implied by law, from existing facts. The 'doctrine of resulting trusts has often been recognized and applied by this court, as may be seen by consulting the following cases, the principles of which must govern the present; Snelling vs. Utterback, &c. I Bibb, 609; Browning’s administrators vs. Coppage, III Bibb, 37; Stephenson vs. Stephenson, &c. Ibid 15, Hart’s devisees vs. Hawkins’ heirs. Ibid 502; Per- *593 y's heirs vs. Head’s administrator, I Marshall, 46; Fishlie vs. Dumarsly, III Marshall, 24; Deatly’s heirs vs. Mauphy, &c. Ibid 477.
Parolwi-. donee is ¡ideS'
Among the trusts arising by operation of law, all the books concur in giving the cases, where the conveyance has been taken in the name of one man, find the purchase money paid by another, as constituting one ■class; see Roberts on Frauds 96, in addition to the above cases. The conveyances in this case, have bceh made to the heirs of John Letcher. Who paid the consideration? The answer must be given from the evidence. It is proper here to remark, that the deeds of conveyance do not state by whom the purchase money was paid. If the deeds negatived a payment thereof by the complainant in whole or part, it might be, that he could not introduce parol proof (o counteract the statements thus made on the face of the deed; see Roberts on Frauds 99.
However this might be, there is nothing in the casé which prevents the application of the modern rule, recognized in Snelling vs. Utterback, by which parol evidence is permitted to establish a trust. We are ■opinion from the evidence, that the complainant paid out of his own funds half the purchase moneys part passing through the hands of John Letcherin his lifetime, and the balance paid over directly by the complainant subsequent to the death of said John. The three hundred and twenty acres at §2 50 cents per acre, amounts to §SOO. That this was the price of the land, is further shown by the consideration as expressed on the face of the deeds. It is not shown by the defendants, that the complainant, after tlic death of his brother John, ever possessed any means belonging to bis representatives, with which to payr for the land, except the bond for £200, arising from the sale of the Mercer tract. It is staled in the -answers of the defendants, that he had other means, but there is no proof of the fact. Deducting the payment made ■ to George, and $50 for each of the three sons of John Letcher, from the £300 bond, and there will remain but $366§, with which to pay the ,$'800 for the laud. Where did the ■déficit come from? It is more than probable, indeed we regard it certain, that there was a payment made by ■John Letcher in his lifetime, but how much is not *594 known. Reading slates, be does not recollect any such payment. But whatever sum was paid, it is clear from the evidence, that the complainant paid his half of it, by furnishing his brother John with the money to make the payment. Reading proves, that the complainant, after the death of John f .etcher, paid £100 in a note, and there is proof of his having made other payments. Although the data for an accurate calculation is not given, we are satisfied from the whole tenor of the evidence, that the complainant paid half the purchase money, with the expectation ofholding half the land, and that John Letcher sanctioned such an expectation on the part of the complainant, at the time he advanced •half of the first payment.
Although a trust cannot he created by parol declarations, and although a parol agreement in relation to lands, cannot lie enforced; yet, when the question is whether the law will imply a trust from the facts in a given case, it is not improper to show the intent of the party, laying out the money by his declarations. As the trust resulting from the fact of one man’s paying the •money while the conveyance is made to another, may he destroyed by countervailing parol evidence; so it may be strengthened by evidence of a similar character. None can better support the trust which results by implication of the law, than the declarations of the parly''holding the conveyance, that another was entitled to an use or interest in it. We have therefore, regarded the proof of the declarations made by John Lefcher, that the complainant was to have half the land; that he was partner, &c., as entitled to consideration, coupled with the fact, that the complainant paid half the purchase money, when such declarations alone might he insufficient to justify a decree in favor of thecom-plainant. The cases decided by this court, already referred to conclusive]}' show, that the intent with whic h the purchase is made by the purchaser using the money of another, is entitled to weight, when evidenced by-proof of his own declarations.
It is needless to comment on the circumstance, that the complainant asserted his right, during the year the contract was made, by his brother, with Reading arid Flournoy; and that when his bill was first filed, now more than thirty-five years since, his claim was appr v *595 bated by the administratrix and widow of John Letcher,-as proved by her answer to the original bill. There is no evidence, that her answer was procured by imposition,__! as is charged in the recent answers. We are of opinion upon the whole case, that the heirs of John Letcher hold the title"uto half the^three hundred and twenty-acres, as trustees for the complainant, and that the ■ court instead of dismissing the bill, should have de--creed a partition and conveyance. But'even if it had" been proper to refuse that, still under the prayer for general relief, we think an account should have been taken, and the complainant should have been paid for his advances made for the land. The case of Parker’s heirs vs. Bodley, IV Bibb, 102, cannot govern and control this, because Bodley made no advance of cash to pay Byers for the land, before the contract was made, nor did he afterwards pay any money to Byers, the sel-ller of the land. All Bodley’s payments were made to Parker under a parol agreement with him, and which the court refused to enforce in consequence of the operation of the statute of frauds. There was no resulting trust in favor of Bodley.
Daveiss, for appellant; Anderson anti Triplett, for ap-pellees.
The decree of the circnit court is reversed, and the cause remanded, with directions to grant the complainant relief in conformity to the principles of this opinion. The appellant must recover costs.
Note. — Chief Justice Robertson did not sit in this cause.